## McLain vs. The State of Georgia.

1. A person who is on the grand jury list of the county is not thereby rendered incompetent to act as a traverse juror or talesman on the trial of a felony.

2. That the certificate of lists of grand and traverse jurors were not signed by the jury commissioners was not good cause of challenge to the poll; especially where the challenge to the array was made and withdrawn, and where, after thorough examination by the court as to the correctness of the lists, the certificates were completed by the signatures of the commissioners.

3. A county school commissioner is not such a county officer as is rendered incompetent by statute to act as a jury commissioner.

4. After a witness has stated the facts connected with a homicide falling within his own knowledge, he may give his opinion, based thereon, as to the cause of the death. This does not involve a question of skill or science, or require a resort to expert testimony to show the cause of the death.

5. Where a person slain, while in *articulo mortis* and conscious of his condition, made statements as to the cause of his death and the person who killed him, such dying declarations are admissible in evidence.

6. Where an indictment for murder alleged the killing of W. F. Sexton, and the witnesses spoke of the deceased as Freeman Sexton, the question of identity having been submitted to the jury, who found that the deceased, as charged and proved, was the same person, and there being evidence to support such finding, this court will not interfere.

7. The evidence was sufficient to show that the deceased came to his death from wounds inflicted by the defendant.

8. The doctrine of reasonable fears as justification for a homicide having been given fully and favorably to the defendant, it was unnecessary to repeat it in substance upon request.

9. The verdict is supported by the evidence.

December 21 1883.

Criminal Law. Jurors. Constitutional Law. Officers. Witness. Charge of Court. Before Judge MERSHON, Charlton Superior Court. April Term, 1883.

David McLain was indicted for the murder of William F. Sexton. The evidence showed, in brief, the following facts: McLain's mother claimed certain improvements on land as belonging to her. She had formerly lived there, but had moved, and at the time of the homicide Sexton was in possession. Mrs. McLain obtained permission from one Lang, the agent of the owners of the land, to sell or haul off the improvements, and she and her two sons and a nephew of about thirteen or fourteen years of age went there for that purpose. Some conversation ensued, and the parties could not agree; whereupon McLain said he would haul the rails off, and told the others to begin doing so. Sexton claimed that the improvements belonged to the land. The witnesses on each side testified to profanity on the part of the other, and it appears to have been mutually indulged in. Sexton turned and started towards the house, and defendant fired upon him with a shot gun. He went around the house, and then went in and laid down, while the defendant ran away. Sexton remained there for about two weeks, and was then carried in a cart to another place about three or four miles away, where he lived about a week longer, and then died. From the time

he was shot until his death, he was continually spitting blood; he was propped up so as to sit by the fire sometimes, but never got up.

The evidence for the defendant differed from the above principally in tending to show that. Sexton had frequently made threats to kill defendant, and they had been communicated to the latter; that, on the occasion of the homicide, he cursed defendant, said that he had long wanted to kill him, and now he would kill both him and his brother; that he thereupon started towards the house, as if to get a weapon, and defendant fired upon him. In his statement, defendant asserted his fears for his safety.

In testifying, some of the witnesses spoke of Sexton, the deceased, as "Freeman Sexton" and some as "Mr. Sexton;" none of them called him William F. Sexton, or in terms stated that the two were identical.

The jury found the defendant guilty. He moved for a new trial, on the following among other grounds:

(1.) Because the verdict was contrary to law and evidence.

(2.) Because the court erred in putting jurors on the prisoner as tales jurors who were taken from the grand jury list.

(3.) Because the court held that the jury and jury list were not rendered bad by the fact that one of the commissioners was the county school commissioner, and that he was a competent commissioner.

(4.) Because the court admitted evidence of the dying declarations of the deceased. [The witness who testified to them stated that, from the time when he was shot, Sexton expressed no hope of a recovery; that the day before he died, he said there was no chance for him, that he hated to die that way, and asked the witness to take care of his family; that in this conversation he said that defendant had shot him and he would die from it.—The court held that this was a sufficient foundation, and having the jury called in from the room to which he had caused them to

retire during the preliminary examination, admitted the evidence.]

(5.) Because the court permitted one Wainwright, the prosecutor, to give his opinion as to the cause of the death of Sexton, the witness not being an expert. [The witness testified that he was nearby when the shooting took place, and hearing groans and hallooing, ran up and found Sexton on the bed mortally wounded. He then proceeded to describe the nature of the wound, and stated the length of time that Sexton lived, his condition, his death, and his dying declarations.]

(6.) Because the jury found contrary to the following charge of the court : " If the jury should find from the evidence that the state submitted no evidence that the man killed was W. F. Sexton, then this would be a failure to prove a material allegation in the bill of indictment, and the defendant must be acquitted."

(7.) Because the court refused the following request· " It is sufficient if there be actual danger, to the defendant's comprehension as a reasonable man: the inquiry is not whether the harm apprehended was actually intended by the assailant, but was it actual and real to the defendant as a reasonable man, as compared with danger remote or contingent.

(8.) Because the court refused the following request: " That in order to find a person guilty under the law, where it is charged that deceased came to his death by a wound inflicted by defendant, the jury must not only find, beyond a reasonable doubt, that the wound was inflicted by defendant, but that that wound was the proximate cause of the death, and not the remote cause of the death;" and further erred by striking from said charge the words " proximate," " and not remote cause of the death," so as to leave said charge, " but that that wound was the cause of his death;" which alteration was made without the consent of the defendant, and without his knowledge, until said charge had been given.

The motion was overruled, and defendant excepted.

HARRIS & SMITH; S. W. BAKER, for plaintiff in error.

C. ANDERSON, attorney general; G. B. MABRY, solicitor general; S. R. ATKINSON, for the state.

HALL, Justice.

The first question to be considered is, whether the court erred in overruling the prisoner's challenge to the jurors, as they were severally put upon him, upon the ground of challenge assumed and insisted upon.

(1.) That several of said jurors belonged to the panel of grand jurors, and were incompetent to serve as tales jurors upon the trial of this issue.

(2.) That when the jury box was revised and the list of jurors was made out, the commissioners neglected to certify and sign said list.

(3.) That one of the jury commissioners was incompetent to act as such, he being then a county officer, to-wit: a county school commissioner.

1. The first of these grounds was abandoned on the hearing in this court, and very properly so, as it has been repeatedly decided that a person who is on the list of the grand jury is competent to act as a traverse juror on the trial of a felony. 4 *Ga.*, 136; 20 *Ib.*, 60. The constitution provides expressly that grand jurors shall be competent to serve as traverse jurors. Code, §5175. A grand juror, belonging to the panel which found the indictment, would doubtless be incompetent, for the reason that he had formed and expressed an opinion from having heard the evidence under oath.

2. That the certificate of lists of grand and traverse jurors were not signed by the jury commissioners might be a good ground to challenge the array, we shall not stop to consider; but we think it is not good cause of challenge to the poll, especially as in the present case the challenge to the array was made and withdrawn, and inasmuch as the certificate was completed by the signatures of the com-

v 71–19

missioners, each and all, after a thorough and searching investigation by the court as to the correctness of the lists, before the panel was put upon the prisoner.

3. The fact that a person is a county school commissioner does not disqualify him from acting as a jury commissioner, he is not such a county officer as is rendered incompetent by the statute to act on the jury commission. By art. xi., §ii., par. i., of the constitution, Code, §5227, county officers are described as those who shall be elected by the qualified voters of their respective counties or districts, and who shall hold their offices for two years.

Members of the board of education (county school commissioners) are chosen by the grand jury; and after the first selection, their term of office extends to four years. Code, §1254. From the first of January, 1880, the board of jury commissioners was required to be composed of six discreet persons, who were not county officers, and who were to hold their appointments for six years, etc. Code, §3910, (a). The term county officers in this act was evidently used in the sense attached to it in the constitution, and in that sense it does not include a school commissioner.

4. There was no question of skill and science in this case, and consequently no necessity to resort to the testimony of experts; the witness was not called upon for an opinion upon facts proved by other witnesses. Code, §3868. He gave his opinion upon the facts sworn to by himself as to the cause of the death of the party alleged to have been killed, and he was competent to do this. Code, §3867. 62 Ga., 65, covers this case.

5. The dying declarations of the party slain were properly admitted; he was in articulo mortis when they were made, was conscious of his condition; the declarations related solely to the cause of his death, and the person who killed him. Code, §3781. The foundation for their admission was laid in the absence of the jury, who had been ordered out of court during this preliminary exam-

ination. They contained no objectionable matter, such as hearsay, etc., and no improper use appears to have been made of them. *Mitchell vs. The State*, decided at this term, in which the authorities upon the subject are collated and reviewed.

6. The indictment alleged the killing of W. F. Sexton by the defendant. Most of the witnesses spoke of deceased as Freeman Sexton. The question of the identity of Freeman and W. F. Sexton was submitted to the jury, and they found that they were one and the same person; the testimony not only sustained, but required this conclusion. There was no error as to this question. 11 *Ga.*, 615; 68 *Ib.*, 833.

7. There was an abundance of evidence to show that the deceased came to his death from the wounds inflicted by the prisoner; indeed, no other cause of death could be inferred from it.

8. The objections urged to the charge of the court as to the sufficiency of the circumstances to excite the fears of a reasonable man, and as to the defendant's acting under the influence of those fears and not in a spirit of revenge, and as to his refusal to charge as requested upon this subject, are not well taken. The court gave in charge Code, §4330, as to justifiable homicide, and in connection therewith the succeeding §4331, as to reasonable fears, and instructed the jury that the question was not whether these fears were, in fact, well grounded, but whether the defendant acted under such circumstances as would induce the fears of a reasonable person; and at the request of defendant's counsel, that if a person kill another under the fears of a reasonable man that the deceased was manifestly endeavoring to commit a personal injury upon him amounting to a felony, then the killing was justifiable, and the defendant could not be convicted. He further charged upon this subject, as requested, that to justify the homicide, it is sufficient if the danger be apparent, though unreal—that is, if the appearance of danger was such as to

arouse the fears of a reasonable man, and he acted under the influence of those fears. The circumstances from which the conclusion might be drawn that the defendant acted under the fears of a reasonable man had, at his request, been previously pointed out to the jury, and, we think, in a manner too favorable to him, inasmuch as the request omitted to mention all such facts in evidence as qualified or detracted from the weight of such circumstances, and no allusion was made to them by the judge in giving the request. After this, we cannot see the necessity of charging, as requested, " that it is sufficient if there be actual danger, to the defendant's comprehension, as a reasonable man. The inquiry is not whether the harm apprehended was actually intended by the assailant, but was it actual and real to the defendant, as a reasonable man, as compared with danger remote or contingent." The substance of this request, in a less abstract but more intelligible form, had been several times repeated to the jury, and we cannot understand the necessity for another repetition of it, or what possible injury could have resulted to the defendant from refusing a thing that had been several times pressed upon the jury in a manner that would enable them to comprehend it more easily and clearly. It might have confused instead of aiding them, and prevented their arriving at a proper conclusion.

9. The ground that the verdict was contrary to law and evidence was scarcely alluded to on the argument before this court; and had it been, we regret to say that it would not have changed the result. The verdict is fully sustained by the evidence, and as there is no error in the case of which the defendant can complain, it must stand.

Judgment affirmed.