## ATLANTA & WEST POINT RAILROAD CO. *v.* HARALSON.

1. Where, in an action for damages on account of a personal injury received in alighting from a railroad train, the petition alleged that the plaintiff's injuries were permanent, and that his ability to labor had been reduced about one half, after the plaintiff had testified as to the injury and its nature and character and given all the material facts touching his physical condition, his previous capacity, and his subsequent incapacity resulting therefrom, it was not error to allow him to state that he could not do more than half as much labor in his vocation as a blacksmith since the injury as he could before it occurred. *Atlanta & West Point R. Co.* v. *Johnson,* 66 *Ga.* 259 (2), (4a); *Chattanooga, Rome & Columbus R. Co.* v. *Huggins,* 89 *Ga.* 494.

(*a*) This evidence was not rendered inadmissible because the witness also testified that his injuries had affected him as a blacksmith; that he had to give up his trade on that account; that he was working in a blacksmith shop, and was fitting himself for blacksmithing.

(*b*) The objection to the evidence as not being warranted by the pleadings was without merit.

2. Where the plaintiff claimed that he was injured by a fall in attempting to alight from a railway train while in motion, under the direction of the conductor, there was no error in allowing a witness who had testified that as the plaintiff attempted to leave the train he pitched forward, fell, and rolled over on the ground, to state, "I don't remember plaintiff saying anything as he rose, except that he was hurt on his shoulder and leg and hip," there being nothing to indicate that this was an afterthought or was a mere narration of a past transaction. *Southern Ry. Co.* v. *Brown,* 126 *Ga.* 1, 5 (2).

(*a*) Especially will this furnish no ground for reversal, where the presiding judge in a note to this ground of the motion for a new trial certified that the witness had already testified, without objection, that immediately after he got up he had stated that he was hurt, and that his shoulder was hurt.

3. If a person's capacity to labor was permanently diminished by a physical injury wrongfully inflicted upon him by another, such permanent diminution of capacity to labor was for the consideration of the jury in determining the amount of the recovery, notwithstanding there may have been no proof showing a diminution of earnings or loss of time after the injury, and the pecuniary value thereof.

4. If it be sought to recover because of a decreased ability to earn money, or because of a loss of time, entailing pecuniary loss, there must be some proof as to such diminished earnings or earning capacity or the

value of such lost time, in order to authorize a submission to the jury of the question of such pecuniary loss. But permanent diminution of capacity to labor is for the consideration of the jury, along with such elements of damage as pain, suffering, disfigurement, or the like, if proved, in determining the amount of damages to be awarded.

5. If on an excursion train carrying many passengers a railroad company placed two conductors, or two persons entrusted with the duty of performing the usual functions of a conductor in taking up tickets, notifying passengers of stations, directing their movements, or the like, on different parts of such a train, as between the passenger dealing with one of such agents in connection with such duties and the company whom he represented he would stand in the place of a conductor, whether he was such permanently or not.

6. If, on a train consisting of a large number of coaches and carrying many passengers, the conductor was unable to fully discharge the usual duties of his position between stations, and with his authority and knowledge another employee of the railroad on the train took charge of a section thereof and acted as the conductor in connection with it and with taking up tickets, notifying passengers of stations and' directing them in regard to alighting, and if there was nothing to indicate that he was not the conductor, and a passenger so dealt with him, believed him to be the conductor, and acted on his announcements of a station and under his command as to leaving the car, the company would be liable to such passenger for an injury occurring in leaving the train, to the same extent as if the person thus acting was the conductor.

7. From a note of the presiding judge appended to the motion for a new trial it appears that the improper remark of counsel for plaintiff, made during the progress of the argument of counsel for defendant, was held to be improper and its effect was corrected by due instructions to the jury.

Argued February 6,—Decided August 14, 1909.

Action for damages. Before Judge Freeman. Troup superior court. March 28, 1908.

E. W. Haralson brought suit against the Atlanta & West Point Railroad Company to recover damages for a personal injury. He claimed that he was a passenger on board an excursion train returning from Atlanta to Gabbettsville; that he surrendered his ticket to the conductor; that about 8:45 p. m. the agent having charge of the train, "the conductor, as aforesaid, called out Gabbettsville, slacking his train down to a low rate of speed;" that the plaintiff, relying on the announcement of the conductor as to the station, proceeded to the platform of the passenger-coach and down on the steps for the purpose of getting off; that the train did not come to a full stop, but the conductor came to the platform and said, "Gabbettsville! Get off! Get off! I will not slow up

any more. There is no danger. Get off!"; that the plaintiff, being unused to travel and not knowing at what speed the train was going, and relying on the instructions of the conductor, proceeded to get off the train, believing that he was in Gabbettsville at a point on the line of the road with which he was familiar; that in fact the station was Cannonville, that as he left the train he was jerked violently forward, causing him to fall and be injured. The defendant denied all the substantial allegations of the plaintiff. On the trial the evidence was conflicting, but the plaintiff introduced testimony in support of his contentions. Throughout the evidence on behalf of the plaintiff the person to whom he surrendered his ticket and who, he contended, made the announcement of the station and commanded him to get off the train, was referred to as the conductor. The plaintiff testified that "The conductor had on citizen's clothes, with a conductor's cap on. He had a conductor's ticket punch, and had a conductor's lantern with him, and acted as a conductor. He took up tickets going to Atlanta in the coach he was in, and coming back he did the same thing. There was no other [person] officiating in the coach we were in but this conductor." Another witness testified: "We went to Atlanta one day, and came back the next day. The same train and same crew that carried us brought us back. So far as the conductor was concerned, they had two conductors." Another witness for the plaintiff testified: "I don't specially remember the man that called it [the station] out. It was one of the men in charge of the train. The man approached the entrance of the car. There were two men acting and taking up tickets. I had seen the man performing duties on the train. I don't know what he did.— what they usually do." A witness for the defendant testified, that he was the conductor on the excursion train in connection with which the injury was claimed to have occurred; that there was but one conductor on that train; that at Cannonville, where the plaintiff claimed to have been injured, the witness called out the proper name of the station; that he went through not over five cars, there being eight or ten in the train. In regard to another acting as conductor he testified: "Only one man officiated as conductor on that occasion on that train. The first duty of a conductor is to see that his train is coupled up in proper shape, and that the brakes are in good order. After the train is coupled up

and starts off on the road, it is the duty of the conductor to go ahead with his work, taking up tickets and checking out his freight. Where it is a passenger-train, he goes to work with his tickets. In answer to the question if it is not almost impossible for one conductor to operate a passenger-train of ten coaches and make the stops between Atlanta and West Point, where it stops every four or five miles, I reply that he won't get through his train from one station to another with a big train. In answer to the question as to whether, therefore, it is not necessary on an occasion of that sort, in operating an excursion train, to have a conductor for each two or three coaches, I reply we call on the flagman; but not but one conductor to a train. The flagman in such event does not perform the duties of a conductor. The flagman don't punch any tickets. They take them up and give the tickets to the conductor. One of the duties of the conductor is to take up tickets and check the passengers. If another man does that, he does not perform the duties of the conductor. He is just simply a helper. I just call him a helper. . . It is likewise the duty of the conductor to announce stations so far as he can." He stated that he had a brakeman on that occasion by the name of Ruff; that he could not say whether the brakeman had on a conductor's cap or not, but he did not have a conductor's punch, because he was only a helper; that he might have had a street-car punch or baggage punch, but not a train punch; that the witness did not know whether the brakeman had slips of the kind put in passengers' hats or not. He denied that he put Ruff there for the purpose of looking after about five cars, or that Ruff had charge of the passengers in those cars; but in answer to the question, "If you say you are the conductor, and did not do it, who did?" He replied, "I reply, Ruff was a helper, and sometimes the other man was." When asked, if he did not look after the five coaches in the rear, who did so, he answered that he did not know whether Ruff did so or not. He said, "I had helpers on that occasion. I had assistants. They were to help and assist the conductor in his work. I don't know whether he applied himself to five coaches or not. As to what were the duties of the helper on this occasion, he was to help get in and out of the side-tracks, and to light up the train, and to get passengers on and off. He took up tickets only when we were crowded. We were crowded on this excursion, and we took

up tickets. I don't know whether he checked any passengers or not. His duty was to handle the train, and to get them in and out." Ruff was not introduced as a witness. The jury found for the plaintiff $1,500. The defendant moved for a new trial. The motion was overruled, and defendant excepted.

*Dorsey, Brewster, Howell & Heyman* and *A. H. Thompson,* for plaintiff in error. *F. M. Longley* and *S. Holderness,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

On most of the rulings contained in the headnotes no elaboration is necessary. Complaint was made in regard to the charge of the court on the subject of permanent diminution of capacity to labor, as constituting an element of damages. This point was raised by several grounds of the motion, two of which will be sufficient to be set out. He charged, "If you find from the evidence that the plaintiff was injured, and that on account of such injuries the plaintiff's capacity to work has been permanently lessened, then the plaintiff could recover therefor." He refused a request to charge as follows: "Before the plaintiff can recover anything, as damages, on account of lessened ability to labor, he must show by the evidence that his capacity to labor has been lessened, and the pecuniary value thereof," etc. This question is practically ruled in *City Council of Augusta* v. *Owens,* 111 *Ga.* 464 (8). If a plaintiff seeks to recover for pecuniary losses resulting from lost time or permanent diminution of capacity to labor and earn money, he should introduce evidence on which to predicate such a recovery. But it has been held in this State that permanent diminution of capacity to labor is an element of damages for the consideration of the jury, in determining the amount of such recovery, along with evidence as to pain, suffering, disfigurement, or the like, although no pecuniary value is proved by the evidence. It has been said that the loss of capacity to work is in the nature of pain, though no pecuniary loss be shown. *Powell* v. *Augusta and Summerville R. Co.,* 77 *Ga.* 192, 200; *Atlanta Street R. Co.* v. *Jacobs,* 88 *Ga.* 647; *Metropolitan Street R. Co.* v. *Johnson,* 90 *Ga.* 500, 508; *Brush Electric Light and Power Co.* v. *Simonsohn,* 107 *Ga.* 70.

It was contended, that, as the presiding judge mentioned permanent impairment of capacity to labor separately from his charge touching pain and suffering generally, the jury might have been misled into thinking that they might duplicate damages for pain

and suffering; and that if lessened capacity to labor is an element of damages without regard to its effect on the plaintiff's capacity to earn money, it falls within the element of pain and suffering, and is not an independent element of damages.    While the expression, "He is entitled to recover whatever the evidence may show," employed in one portion of the charge touching diminution of capacity to labor, may not have been an entirely apt mode of expression, yet, when taken in connection with the whole charge on the subject, we do not think that the charge of which complaint was made could have confused or misled the jury.    They were distinctly instructed that a right to recover on account of permanent impairment of capacity to labor, in the absence of proof as to earning capacity, did not authorize a recovery of anything on the latter ground, or for loss of time, that the plaintiff could recover nothing on those grounds, and that in arriving at their verdict they would allow nothing for loss of power or diminished capacity to make money or for loss of time, there being no evidence to authorize it.    While the judge did not distinctly classify impairment of capacity to labor as being pain and suffering, under the ruling in *Atlanta Street R. Co.* v. *Jacobs,* supra, we can not say that his charge on the subject was such as to require a new trial.    In so far as the requests on this subject stated a correct principle of law, they were covered by the general charge.    The request set out above did not correctly state the law.

If a railroad company places two conductors in charge of a train, or two agents having charge and with authority to direct passengers to alight, whether both be called conductors or not, within the sphere of their respective duties in this regard the company is bound by the conduct of each of them.    In *Coursey* v. *Southern Ry. Co.,* 113 *Ga.* 297, 300, it was held that a person who was injured in an attempt to leave a moving train, on command of the conductor, or the person in charge, could not justify such action on his part without showing that the person who gave the command to alight was in fact the conductor or some other official of the railroad company having authority so to direct.    It was also held that the fact that the person who gave the direction to the passenger carried a lantern on his arm and took up tickets from the passengers was sufficient to make out a prima facie case of his position.    The grant of a nonsuit was reversed in that case, and a

verdict subsequently rendered in favor of the plaintiff was allowed to stand. *Southern Railway Co.* v. *Coursey,* 115 *Ga.* 602. It is the duty of a carrier of passengers to provide proper agents for their cars. The conductor is generally in charge of the train. If an excursion train stopping at frequent points along the route is composed of so many coaches and is so crowded with passengers that the conductor can not attend to his usual duties in connection with them, and authorizes another employee to perform the duties of a conductor with regard to certain coaches and the passengers therein, while he looks after other coaches, as to a passenger dealing with such employee in connection with the duties so assigned to him, and in reliance upon his being the conductor, he may be treated as such quoad hoc. Of course the mere belief on the part of a passenger that a certain agent is the conductor does not make him so or prove the fact. But where the question involves the diligence or negligence of the passenger in acting under direction of such employee, his reliance upon the authority of the latter is a matter for the consideration of the jury. Taking the charge on this subject complained of in connection with its context, we do not think there was any substantial error in it, if any inaccuracy at all.

While the evidence was conflicting, it was sufficient to authorize the verdict, and there was no error in overruling the motion for a new trial. Lake Erie & Western Ry. Co. v. Fix, 88 Ind. 381 (45 Am. R. 464). *Judgment affirmed. All the Justices concur.*