27563. ÆTNA CASUALTY & SURETY CO. *et al. v.* CHANDLER.

DECIDED OCTOBER 27, 1939. REHEARING DENIED DECEMBER 13, 1939.

*Edgar. B. Dunlap, Haas, Gambrell & Gardner,* for plaintiff in error.

*Wheeler & Kenyon, Charles J. Thurmond,* contra.

GUERRY, J.  Claimant's husband, a young man 27 years of age, weighing 175 pounds, and apparently strong and able-bodied, was working at his regular job with the Chicopee Mills, driving a truck and lifting into it garbage and ash cans weighing approximately 150 to 200 pounds. He had with him a helper. About three o'clock in the afternoon of January 18th, just after he and his helper had placed the eighteenth can upon the truck, he complained that his head "was killing him." He "said he believed he had hurt himself." He had made no previous complaint. He sat down in the truck and after it started he fell over on his companion, unconscious. He was carried to the clinic where he was treated for nausea and headache and later regained consciousness and went home. On January 22nd he was again carried to the hospital in a semi-conscious condition, complaining of terrific headaches, and a spinal puncture showed a bloody spinal fluid. His condition was diagnosed as encephalitis, a disease of an infectious nature causing inflammation of the brain. He eventually lapsed into a coma and died February 19th. There was no evidence of a blow, or wound, or injury of any kind which he had received, other than the performance of his daily task in its usual manner.

According to the testimony of Dr. Allen, a witness for the claimant, encephalitis is a communicable disease, infectious in its nature. It is thought to be caused by an automicroscopic virus "which is a thing we have never been able to see." We know, however, that it is present because it can be transmitted from animal to animal and man to man. Encephalitis is a specific infection of two types, the epidemic type, the type that occurs in epidemics, and a type following some acute infection like influenza, scarlet fever, measles, or pneumonia. Patients usually have hemorrhage of the brain in encephalitis. Its onset is not induced by the nature of the person's activity at the time. "It is not induced by trauma." According to Dr. Whelchel, a witness for the defendant, hemorrhage of the brain often follows encephalitis; encephalitis does not follow hemorrhage of the brain. "You have two distinct and separate conditions taking place at different times." The witness, Dr. Allen, testified: "I would not say encephalitis is more likely to attack a human

being engaged in active exercise than one who is not so engaged. It would be impossible to say positively that what the patient was doing at the time produced the immediate result. Any exertion produces a condition more conducive to a hemorrhage than in one who is quiet."

Dr. Whelchel, upon testifying that encephalitis is inflammation of the brain, and after having had detailed to him the type of work performed by the deceased and what he was doing at the time of the manifestation of the injuries, and upon being asked his professional opinion as to the possibility or probability of the alleged strain producing the encephalitis, replied: "I can't connect it to it. I see no reason why it should have any bearing on it all." Dr. Garner testified that encephalitis is an acute inflammation of the brain, and that it is an acute infectious disease not brought about by trauma; that a person who is devoid of objective evidence of trauma and who has a sudden onset from which he immediately goes into convulsions he would consider to be affected by the disease and not overwork or overstrain; and that it was his opinion the work the deceased was doing did not cause his condition.

The single director, on the issue as to whether the deceased received an injury which arose out of and in the course of his employment, held that the doctor who was a witness for the claimant testified that it would be impossible for him to say positively that the exercise the deceased was engaged in had anything to do with producing the immediate result to him, together with the testimony of the other doctors in regard to the nature and effect of encephalitis from which disease the claimant's husband died, and that he did not receive any injury which aggravated a pre-existing condition or disease; and that he died as a result of a disease which was in no way caused or aggravated by any accidental injury. On appeal to the full board it was held that while the straining in lifting the cans did not cause the disease, the pre-existing disease was aggravated by reason of the straining at the cans, and this fact caused the hemorrhage of the brain; and that there was an aggravation of a pre-existing disease and the claimant was entitled to compensation. This finding was approved by the superior court judge, and exceptions were taken to his ruling.

While we recognize the finality of the finding of the full board when there is any evidence to support that finding, we do not think

there was any evidence to support such finding in this case. Not a single doctor testified that in his opinion the work the deceased had been doing caused the hemorrhage of the brain. Dr. Allen, witness for claimant, testified that from his examination of the deceased he was unable to say that the exercise of lifting the cans into the truck, which was a part of his daily task, was the inducing cause of the hemorrhage of the brain, or the condition of the claimant's husband. He did testify that any strain of any kind would elevate the blood pressure and be more conducive to hemorrhage, but "whether he would have had it I don't know, but I do know that a sudden physical strain would make him more likely to have a hemorrhage. Whether that initial hemorrhage was the result of encephalitis per se or whether it was the result of the physical strain, I don't know."

It is true that in determining the question as to whether the physical seizure was in fact induced by the work of the employment, consideration should be given to any previous weakened condition of the employee, since it could be true that the work of the employment under such circumstances might induce the seizure when otherwise it would have no such harmful effect. *Bibb Mfg. Co.* v. *Alford,* 51 *Ga. App.* 237 (2) (179 S. E. 912). However, the Georgia law, Code, § 114-102, does not contemplate any disease "except where it results naturally and unavoidably from the accident." However, an injury which aggravates a pre-existing disease is compensable where such increased result would not have occurred except for the injury. *Pruitt* v. *Ocean Accident and Guarantee Co.,* 48 *Ga. App.* 730 (173 S. E. 238).

The full board in its findings said that the medical testimony was conflicting as to whether or not the straining at the heavy cans caused or aggravated the disease. It found, however, that at that time the decedent was suffering from encephalitis. The injury, therefore, did not cause the disease. The doctor who was a witness for the claimant refused to testify that the work the deceased was doing at the time had anything to do with the result. He refused to say that encephalitis would be more likely to attack a human being who was engaged in active exercise than one who was quiet. He did say that exercise was more likely to cause a hemorrhage of the brain than a state of quiet.

The other expert testimony was that the strain of lifting the

cans did not bring about the immediate result. As is said in Honnold's Workmen's Compensation, § 98, "Since it is only when there is a direct causal connection between the exertion of the employment and the injury that an award of compensation may be made, the material question to be determined is whether the diseased condition was the cause or whether the employment was the proximate contributing cause." While susceptibility to injury will not prevent a recovery for disability or death proximately caused by an injury arising out of the employment, no compensation is payable where a pre-existing condition causes the death or disability independent of any subsequent mishap. If, during the course of the employment, death comes in an ordinary way natural to the progress of the disease with which one is afflicted and with which one has been smitten before the accident, there can be no recovery.

The finding of the full board that the strain itself of the ordinary task of the decedent rather than a disease caused the immediate result to the decedent was based on an inference and not on any direct or opinion testimony. On the other hand there is opinion testimony to the contrary. There is nothing except an inference on an inference on which to base the finding that the alleged injury aggravated the disease. The uncontradicted testimony was that the result of encephalitis was likely, and was as natural whether the decedent had been resting or at his regular work. The onset of the disease is not induced by the nature of the person's activity at the time. "It strikes when it is ready." However much we dislike to interfere with the finding of the full board, and however limited our authority when such finding is supported by any evidence, we feel in this case that there was no evidence upon which to base a finding that the disease in this case of which the decedent died was aggravated by the work he was performing at the time of its onset. The court erred in sustaining the award of the full board.

*Judgment reversed. Broyles, C. J., and MacIntyre, J., concur.*