32169. UNITED STATES CASUALTY COMPANY *et al. v.* KELLY.

Decided November 20, 1948. Rehearing denied December 3, 1948.

*Miller & Head, Frank Lawson,* for plaintiffs in error.
*Sam J. Welsch,* contra.

Parker, J. Flottie B. Kelly, as the widow of Homer L. Kelly, filed a claim for compensation for the death of her husband.

The deputy director awarded compensation; his award was approved by the board, and that ruling was affirmed on appeal by the superior court. While the employer's attorney did not formally admit on the hearing that the deceased suffered an accidental injury arising out of and in the course of his employment, the record shows that the only real dispute in the case was whether the injury sustained bore any causal relation to the death which ensued some two months and eleven days thereafter, and for all practical purposes the fact of the injury seems to have been conceded.

The deceased was employed in digging ditches, and on November 18, 1946, the bank of a ditch caved in around his hips breaking his left ischium and left hip joint. The deceased was taken to a hospital and dismissed the same day, after treatment. The following day the doctor employed by the compensation insurance carrier, Dr. Rufus Askew, examined the deceased at his home and decided that he should be hospitalized again. The deceased was returned to a hospital and remained there from that day until just before Christmas, when he was dismissed and returned home, walking with the aid of crutches. The deceased continued on crutches until about the middle of January when he was able to replace his crutches with a cane. On the morning of January 29, 1947, he was found dead in Fulton County, Georgia, at a spot where he might reasonably have been on his way from his home to the hospital. An autopsy was performed and, as testified to by the doctor who performed it, it showed that the deceased was suffering from a diseased heart condition, and that the immediate cause of death was a ruptured aorta.

It would serve no purpose here to set forth extensively the evidence adduced upon the hearing. It is sufficient to say that Dr. Askew, who examined the deceased the day after he was injured, testified: that he found evidence of a diseased and enlarged heart with a "second aortic sound" when he first examined him; that such an injury as the deceased received would aggravate such a heart condition, especially during the period of pain and suffering, but he thought that such aggravation would not have continued two months, and that the rest which

the deceased necessarily underwent in the treatment of his injuries would have been beneficial to the heart condition; but that, if the deceased continued to suffer pain from the injury up until his death, his opinion would be otherwise; that at the time of his death the deceased was still totally disabled, but would have been able to return to his work in two or three weeks, and that treatment for the injuries would have continued some 8 or 10 weeks.

The only witness for the claimant besides herself was a man in whose house the deceased lived at the time of the injury and until his death. He testified that the deceased continued to grumble and complain about his hip up until the last time the witness saw him before he died; and that on the last night the deceased spent at his house, approximately 24 hours before he was found dead, the deceased was apparently still suffering pain from his injury and had to be assisted in turning over in bed. Dr. George F. Klugh, who performed the autopsy on the deceased, testified for the defendant. His testimony consisted of a narrative of his findings on the autopsy and of answers to numerous questions about his opinion as to whether the injury could have aggravated the heart condition. While Dr. Klugh's testimony relating to the real issue may be said to have been equivocal, wavering and uncertain at many points, he said finally, "any exertion of the heart in his condition would jeopardize his life, and furthermore, any injury, provided he had a chronic infection, which he evidently had, any acute injury frequently does aggravate and lights up the old infection, and how much—I didn't see the man until after he was dead and I could not say how much—but that is the history of those cases, if he had some infection before, it could aggravate it, I don't think there would be any question about arguing about that. . . It could have aggravated it to the extent that it [deceased's heart] would have failed sooner than it would otherwise would, but the question of time—it is a question of time anyway. . . Anything that would put a strain on the heart would be likely to cause death, sudden death. . . He had the heart condition before the injury, in my opinion, I have summarized the whole thing, it could have been aggravated by the injury. . . He didn't have long to live, according to the usual run of such cases, whether

he had the injury or whether he didn't, he may have died earlier." Dr. Klugh had previously testified that, while pain alone would not aggravate a heart ailment, if the pain caused the deceased to exert himself more than usual in trying to make himself comfortable, for example, such unusual exertion would aggravate the heart condition.

We can not say, as urged by the plaintiffs in error, that this evidence was insufficient to support a finding by the director in favor of the claimant. In the absence of fraud the findings of fact made by the director and approved on appeal by the full board, as in this case, are binding on the courts if there is any evidence to support them, and where no error of law appears such findings will not be disturbed on appeal. See the numerous cases cited under Code (Ann.), § 114-710, catchwords "Conclusiveness of findings," and under the same headings in the pocket supplement.

It is no longer open to question in this State that disability or death resulting from the aggravation, by an accidental injury arising out of and in the course of the employment, of a preexisting bodily infirmity is compensable. See *Pruitt* v. *Ocean Accident & Guarantee Corp.*, 48 *Ga. App.* 730 (173 S. E. 238); *Employers' Liability &c. Corp.* v. *Johnson*, 62 *Ga. App.* 416, 421 (8 S. E. 2d, 542).

The plaintiffs in error say in their brief that it is quite clear that the claimant does not contend that her case can be made out by any evidence other than that of Dr. Klugh. They contend that an objective analysis of Dr. Klugh's testimony shows it to have been so equivocal and uncertain as to be consistent with either theory of the case, that is, that the injury did or did not contribute to the causes of death, that such testimony proves neither theory, and that, therefore, the burden being upon the claimant to make out a case, she failed to carry this burden. The plaintiffs in error cite *Woodruff* v. *American Mutual Liability Ins. Co.*, 67 *Ga. App.* 554 (21 S. E. 2d, 298), as being controlling of this case.

The record shows that the deceased suffered a severe and painful injury; that he was disabled from the date of such injury until his death, and the evidence authorized the conclusion that the deceased continued to suffer pain as a result of the injury up

until he died. "The claimant in a workman's-compensation case having proved the injury and subsequent pain, disability, and death, and that the deceased's pain began the day he was injured and lasted until he died, the burden was upon the employer and the insurance carrier, under the particular facts of this case, to prove, as a matter of affirmative defense, that some intervening or pre-existing agency was the cause of his death, rather than the injury proved by the plaintiff." *Royal Indemnity Co.* v. *Land,* 45 *Ga. App.* 293 (164 S. E. 492). We feel that that ruling is applicable to this case, and that under the facts of this case the burden of proving to the satisfaction of the director that some other cause intervened to produce the death was on the employer and insurance carrier; and the claimant having made a prima facie case, the finding for the claimant was authorized and the judge of the superior court did not err in affirming the award in favor of the claimant. *Davis* v. *Bibb Mfg. Co.,* 75 *Ga. App.* 515, 519 (43 S. E. 2d, 780).

The distinguishing features between this and the *Woodruff* case are numerous, as a careful reading of that case will show. The distinction of controlling importance, however, is that in that case the most that could be said of the testimony in favor of the claimant was that the injury *could* have been a factor in the death, whereas here the doctors testified that such an injury *would* aggravate the heart condition of the deceased. As there used, the word "could" merely expresses "a contingency that may be possible" and nothing more. Webster's New International Dictionary (2d ed., 1934). "Would" on the other hand means *necessarily will* and expresses an element of certainty far greater than that expressed by "could"; and testimony that the injury would cause an aggravation is sufficient to sustain the award. Under this view, the finding was authorized.

*Judgment affirmed. Sutton, C. J., and Felton, J., concur.*