33027. JOHNSON v. THE STATE.

DECIDED SEPTEMBER 19, 1950. REHEARING DENIED DECEMBER 15, 1950.

*William Lozier, James H. Dodgen, H. E. Edwards,* for plaintiff in error.

*Paul Webb, Solicitor-General, Ogden Doremus, William Hall,* contra.

MacIntyre, P.J.   The defendant, Henry J. Johnson, was indicted for assault with intent to murder.   Upon the trial the jury returned a verdict finding him guilty as charged and fixed his punishment at not less than two years and not more than three years in the penitentiary.   The defendant's motion for a new trial, based upon the usual general grounds and one special ground, was overruled and he excepted.

■  Under one phase of the evidence and the defendant's statement to the jury, the jury was authorized to find that H. C. Hammond, a policeman of the City of Atlanta, had arrested the defendant for a criminal violation of an ordinance of the City of Atlanta, and after he had put the defendant in the rear seat of the patrol car, he turned his car around and drove back towards Lee Street.   He started off driving at about fifteen miles per hour and had driven about a quarter of a block before he was cut, and that it was the defendant who cut him with a knife.   When he was cut he was looking straight ahead and felt the defendant's arm drag across his head.   The cut began in the corner of his left eye and came up half-way across his nose and that when he awoke in the hospital some time later he had a sore spot on the back of his head, but he could remember exactly what had happened up until the time he was cut in the eye.   He was dazed after the knife went into his left eye and did not remember getting out of the car and only knew that he was stabbed with some kind of knife.   The jury was also authorized to find that, at the time Hammond arrested the defendant, he ran his hands over his body and over his clothes to see whether or not he had any weapons; that he did not put his hands inside the defendant's pockets; that he kind of felt of him slightly and did not search him thoroughly and did not find any weapons; and he told the defendant to get in the back seat of the patrol car and that Hammond never laid his hands upon the defendant before he was cut except to search him and then to put him in the car.   Other phases of the evidence were that almost immediately after the cutting of the officer, he was bleed-

ing profusely below his left eye when other officers and other persons, not officers, arrived on the scene. The knife with the tip of the blade broken off was introduced in evidence after it was identified as the one found in the patrol car immediately after the cutting or stabbing in question. Applying the rule that "in determing whether the offense was an assault with intent to murder, or shooting at another, it is the prerogative of the jury to believe certain parts only of the defendant's statement and to combine those parts with certain parts only of the evidence" (*Shanks* v. *State*, 80 *Ga. App.* 759(5), 57 S. E. 2d, 357), to the evidence and the defendant's statement in the instant case, the verdict finding the defendant guilty of assault with intent to murder was authorized.

■ The policeman upon whom it was alleged the assault was made testified: "I have ten percent vision left in my left eye." The defendant objected to this testimony on the ground that it was obviously hearsay and called for the opinion of a specialist, a competent witness, rather than the testimony or conclusion or opinion of a lay witness who had not been properly qualified to give such an opinion. This testimony objected to did not violate the rule against opinion evidence nor was it necessary that this evidence should have come from a specialist or expert. One thing the witness, Hammond, knew, that whereas he could see before he was cut in the eye, at the time of the trial he was practically blind (90% blind) in his left eye and he could testify to this loss of vision as a fact just as the man who had been born blind, after being cured by Jesus and upon being questioned by the Pharisees as to the means by which his sight had been bestowed upon him, said: "One thing I know, that, whereas I was blind, now I see." John 9:25. There was no question of skill or science in this case and consequently the witness was not called upon for an opinion upon facts proved by other witnesses. He gave his own opinion upon facts sworn to by himself as to the extent of his blindness and he was competent to do this, as showing a circumstance along with other circumstances which all together would tend to show that the knife as used was a dangerous weapon and one likely to produce death and that the defendant intended criminally to kill. *McLain* v. *State*, 71 *Ga.* 279(4), 284; *Pinson* v. *State*, 184 *Ga.* 333 (191 S. E. 95);

*Atlanta & West Point R. Co.* v. *Haralson*, 133 *Ga.* 231 (1) (65 S. E. 437); *Southern Railway Co.* v. *Dean*, 128 *Ga.* 366 (4) (57 S. E. 702); *New York Life Ins. Co.* v. *Bradford*, 57 *Ga. App.* 657(3), 664 (196 S. E. 92); *Southern Railway Co.* v. *Tankersley*, 3 *Ga. App.* 548 (60 S. E. 297). This evidence was not objectionable as being hearsay, and the court did not err in refusing to strike it from the record.

The court did not err in overruling the motion for a new trial for any reason assigned.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*

### ON MOTION FOR REHEARING.

MacIntyre, P. J. The defendant contends in his motion for rehearing that the contents of no ordinance alleged to have been violated was shown; that there was no evidence of the alleged violation of any ordinance of the City of Atlanta; that it was not within the territorial limits of such city that an ordinance was violated; and that it was not shown that the police officers had a warrant for the arrest of the defendant, nor was the violation of any ordinance in their presence shown.

The brief of evidence discloses that "the solicitor tendered in evidence a certified copy of section 88-703, Code of the City of Atlanta, which was admitted *without objection*." (Emphasis added.) This section reads: "Restrictions As To Speed: "Any person driving a vehicle or street car shall drive the same at a careful and prudent speed not greater than is reasonable and proper. . . However in no case shall the speed of a vehicle exceed 25 miles per hour. . ."

H. C. Hammond, the victim of the alleged assault, who was a policeman of the City of Atlanta, testified in part: "On the 7th of April, 1949, I was on duty as City Policeman. Officer Moore was my partner at that time. Our patrol beat was in the Southwest section of Atlanta, which covers from Lee Street all the way back to Ashby Street. I patrol[led?] on Lee Street that morning, I had occasion to arrest the defendant, Henry J. Johnson, the defendant in this case on the morning of April 7, 1949. Officer Moore and myself were traveling south, with 'Atlanta City Police' written on the car, and two cars [one of which was the defendant's] passed us, going at a high rate of speed. I was driving the City Police car, and I increased my speed and

followed them for approximately a mile out Lee Street with neither car slowing down and according to the City Police car's speedometer they were doing between 40 and 50 miles per hour."

E. F. Moore testified in part: "I am a policeman for the City of Atlanta and was such on the 7th of April, 1949. Mr. Hammond was my partner at that time, and we were on duty the early morning hours of that date. We stopped someone on Lee Street for. investigation. We were driving out Lee Street and there was a car come out Lee Street real fast, was speeding; and we. took out after it, chasing it; and there was a black Ford '36 dropped in between us and the car we were chasing, and ran a red light right in front of us. We caught them at Fort McPherson · and throwed the spotlight on this 1936 Ford [the defendant's car]."

.. Thus we think the testimony showed that on the morning of April 7 at about 12 or 1 a. m. these policemen, Hammond and Moore, were patrolling their beat in the southwest section of Atlanta which covered Lee Street all the way back to Ashby Street; that these officers were patrolling (necessarily or inferentially) in the City of Atlanta on Lee Street, and while so doing, defendant passed them in his car going at a high rate of speed; that they followed the defendant's car and the police car's speedometer showed that the defendant's car was going at a speed of between 40 and 50 miles per hour. Thus the jury was authorized to find that the defendant violated an ordinance of. the City of Atlanta restricting the speed of vehicles to 25 miles per hour by running 40 to 50 miles, and further that the defendant's car ran through a red light and moreover, the witness Stewart testified that the defendant's car was running without · lights when the officers were chasing him, and running without. lights at night is a violation of the State statute whether it is done within or without the City of Atlanta; and the trial court. as well as this court could take judicial notice of this statute. *Mullis* v. *State*, 196 *Ga.* 569, 580 (27 S. E. 2d, 91).

These and all other matters in the motion having been considered, the motion for rehearing is denied.

· *Rehearing denied. Gardner and Townsend, JJ., concur.*