## 38595. TRUELOVE v. HULETTE.

Decided April 20, 1961—Rehearing denied May 10, 1961.

*J. S. Hutto, Marshall Ewing, George Jordan,* for plaintiff in error.

*Dewey Hayes,* contra.

NICHOLS, Judge.' This case was assigned to the writer after a dissent to the original majority opinion wa's filed. As I understand the record the sole question for determination is whether or not claimant's injury is compensable under the Workmen's Compensation Act. While "The burden of proof is on the claimant in cases arising under the Workmen's Compensation Act to establish the fact that the employee has sustained an accidental injury such as is contemplated by the act" (*Maddox v. Buice Transfer &c. Co.,* 81 Ga. App. 503, 59 S. E. 2d 329; *American Mut. Liab. Ins. Co. v. Harden,* 64 Ga. App. 593, 13 S. E. 2d 685; *Rivers v. Travelers Ins. Co.,* 93 Ga. App. 779, 92 S. E. 2d 818), it is also the well-established rule that a finding of fact by a director of the Workmen's Compensation Board that the claimant has carried such burden of proof is conclusive upon the courts of this State if there is any evidence to support such finding: *Montgomery v. Maryland Cas. Co.,* 169 Ga. 746 (151 S. E. 363); *American Mut. Liab. Ins. Co. v. Casey,* 91 Ga. App. 694 (86 S. E. 2d 697). In the present case the evidence was conflicting as between the claimant Hulette and the

physician Dr. Parker, with reference to whether or not the injury was compensable under the Workmen's Compensation Act. The claimant testified that his injury occurred when he picked up a piece of lumber, 2 x 8, 16 feet long weighing 150 pounds and stepped backwards into a hole and immediately felt the tear in his stomach, while Dr. Parker, on direct examination, testified: "It is my opinion that muscular activity would not cause a rupture such as that. An ulcer like that can rupture if he had been sitting down, standing up, running, or even lying in bed." On cross-examination Dr. Parker testified: "It is possible that this type of ulcer could have gone without bursting for ten or twelve years, however, something happened on this occasion to cause it to burst. There are certain things that cause one to burst. An ulcer destroys the tissues somewhat, and the tissues would be weak where the ulcer was. Something could happen to cause it to burst quicker than otherwise. I do not think, however, the muscular activity would have anything to do with rupture breakage, however, I will have to answer yes that anything is possible, that an unusual break or strain could cause weak tissues to burst, whereas it could have lasted several months or years longer. I would have to say that anything is possible. Therefore a man with a piece of timber in his hands weighing better than 100 pounds stepping backwards into a hole could cause the ulcer to burst where it might have lasted years or months." Boiled down, in effect, all the doctor, in essence, testified was: It could have happened as claimant said, but I don't think so. In the case of *City of Atlanta v. Champe*, 66 Ga. 659, 663, Chief Justice Jackson speaking for the Supreme Court said: "Whilst, with equal opportunities of judging, the testimony of an expert should be preferred to that of one unskilled in a profession or trade, it is not the rule, nor is it common sense, where the opportunities *to know* are all with the unlearned. In this case the plaintiff *knew* whether she suffered from her womb after this accident and not before better than any doctor could, and if entitled to credit and believed by the jury, her knowledge would, and ought to, outweigh the opinion of a whole college of physicians—because theirs is at last opinion—mere opinion—founded it is true upon

argument and expert argument and experience, but all based at last on the facts the patient discloses by her appearance and the information she gives of internal pain not visible to the eye." Therefore any contention that similar language as used by Chief Judge Hill in the case of *Southern Ry. Co. v. Tankersley*, 3 Ga. App. 548 (60 S. E. 297) is obiter and not binding on this court is without merit, for even if we concede, arguendo, that such language is obiter this court is bound by the above quoted decision of the Supreme Court, which has been followed but never overruled.

While it is certainly true that when the subject under consideration is one solely within the knowledge of experts (where in a workmen's compensation case the injured employee died, as occurred in the case of *Crawford W. Long Hospital v. Mitchell*, 100 Ga. App. 276, 111 S. E. 2d 120) expert testimony, of necessity, must be believed, if uncontradicted. But, such are not the facts in the case sub judice where the fact of injury is uncontradicted, and the sole question to be decided is whether or not such injury is compensable under the Workmen's Compensation Act, and the claimant testified to facts before the single director of the Workmen's Compensation Board which would authorize a finding that such injury arose out of and in the course of his employment in that claimant's injury resulted from the perforation of a pre-existing ulcer, said perforation being caused by an accidental injury while in the course of his employment. The single director hearing the case was authorized, under the evidence, to make such finding and award and the judge of the superior court did not err in affirming such award.

*Judgment affirmed. All the Judges concur except Felton, C. J., and Eberhardt, J., who dissent.*

Felton, Chief Judge, dissenting. First, I think it is very important to set forth the testimony of Dr. T. L. Parker, both on direct and cross-examination, in order that the reader may understand exactly what the doctor meant when he said that an unusual break or strain could cause weak tissues to burst. As will be seen from his testimony, if my construction is correct, he simply meant to say that in this case the strain would not, in his opinion, have caused the tissues to burst, but that under the

unlimited assumption that anything could happen, he would say that the strain could have caused the bursting. Dr. Parker's testimony is as follows: "Direct examination. My name is Dr. T. L. Parker. I am a medical doctor. I attended school at Emory University Medical and interned at Georgia Baptist Hospital in Atlanta and have been a practicing physician since 1941. I am a member of the American College of Surgeons. I examined Mr. Hulette on the 18th of December, 1958. Mr. Truelove called me to see him at his home and I examined him and gave him an injection of dyamtrophine and thought at that time he probably had a ruptured ulcer; I told him to call me back in thirty minutes if he wasn't better. He didn't call me back but I went back anyway and examined him and advised hospitalization. I later operated on Mr. Hulette's abdomen, there was a lot of spillage of gastric contents into the abdomen cavity, and in looking for the ulcer in the usual place, which is right at the lower portion of the stomach, the first part of the small intestines, I failed to find any evidence of perforation or ulcer in that area, but in examining the posterior surface there was a large gastric ulcer, that is an ulcer of the posterior back wall of the stomach which had previously perforated somewhat the small bowel and made a new opening, and the perforation that was present at this time was at that junction and there was leakage there into the sack and out through the general abdominal cavity. This ulcer was of such size, and due to its location being a gastric or stomach ulcer rather than in the small intestine, I checked to see if there was a malignancy of it and I closed the ulcer wall on the posterior surface of the stomach and closed the small intestine where it ruptured into previously and finished the operation. It is hard to pin down a certain length of time the ulcer had been in Mr. Hulette. An ulcer that size certainly I would think had been present for a year or longer and the perforation into the small bowel is the thing. It probably was inherent to the small bowel and inflamed, and when it perforated it didn't go into the cavity and give him symptoms of shock that he had this time; it just made a new opening and that's the thing that happens when you operate on the ulcer and take out a portion of the stomach, you attach the

small bowel to the stomach and make another opening and oftentimes in those areas a larger ulcer will develop at the side where you sew it together, which is what happened in this case. A marginal ulcer developed there and perforated. It is my opinion that muscular activity would not cause a rupture such as that. An ulcer like that can rupture if he had been sitting down, standing up, running, or even possibly lying in bed. In the interest of good health it is my opinion that a man with this condition should have been on a rigid diet." Cross-examination— "I never examined the employee prior to the date I was called to his home, December 18, 1958. The only way that I would know what his condition was prior to this date would be by the pathology that I saw in the operation but it would be different in different cases. There is no case identical I don't suppose. It is my opinion that this ulcer probably originated about a year prior to December 18, 1958. It is possible that an ulcer can go five years without bursting. It is even possible that it could go ten years without bursting, anything is possible.' It could have existed the rest of his life without bursting, however, it had already bursted one time before December 18, 1958. I had never examined him before December 18, 1958. It had bursted before and perforated into the small bowel. It was an abnormal junction of the stomach and small bowel which occurred before the date December 18, 1958. It is possible that this type of ulcer could have gone on without bursting for ten or twelve years, however, something happened on this occasion to cause it to burst. There are certain things that cause one to burst. An ulcer destroys the tissues somewhat, and the tissues would be weak where the ulcer was. Something could happen to cause it to burst quicker than otherwise. I do not think, however, the muscular activity would have anything to do with rupture breakage, however, I will have to answer yes that anything is possible that an unusual break or strain could cause weak tissues to burst, whereas, it could have lasted several months or years longer. I would have to say that anything is possible. Therefore, a man with a piece of timber in his hands weighing better than 100 pounds stepping backwards into a hole could cause the ulcer to burst where it might have lasted years or months

longer." The physician here testified that it was his opinion that muscular activity *"would not"* cause the rupture. He then went on to say on cross-examination in effect that what the plaintiff testified happened *"could have"* caused the ulcer to burst. Many cases have been decided in this court on the question of whether or not job exertion "would" or "could" cause the injury for which compensation is sought.' In *United States Cas. Co. v. Kelly,* 78 Ga. App. 112, 116 (60 S. E. 2d 238) the court said: "The distinguishing features between this and the *Woodruff* case [67 Ga. App. 554, 21 S. E. 2d 298] are numerous, as a careful reading of that case will show. The distinction of controlling importance, however, is that in that case the most that could be said of the testimony in favor of the claimant was that the injury *could* have been a factor in the death, whereas, here the doctors testified that such an injury *would* aggravate the heart condition of the deceased. As there used, the word 'could' merely expresses 'a contingency that may be possible' and nothing more. Webster's New International Dictionary (2d ed., 1934). 'Would' on the other hand means 'necessarily will' and expresses an element of certainty far greater than that expressed by 'could'; and testimony that the injury would cause an aggravation is sufficient to sustain the award. Under this view, the finding was authorized." In *Aetna Casualty &c. Co. v. Chandler,* 61 Ga. App. 311, 315 (6 S. E. 2d 142) the court said: "While susceptibility to injury will not prevent a recovery for disability or death proximately caused by an injury arising out of the employment, no compensation is payable where a pre-existing condition causes the death or disability independent of any subsequent mishap. If, during the course of the employment, death comes in an ordinary way natural to the progress of the disease with which one is afflicted and with which one has been smitten before the accident, there can be no recovery." The "could have" testimony is clearly insufficient. Where the alleged injury is claimed to have been precipitated by job exertion, the evidence must show that the exertion was such that, when considering all other facts of the case, a natural inference through human experience would be raised to indicate that the exertion contributed to the injury, or the medical testimony

given must be that the exertion was sufficient to precipitate the injury. *Callaway Mills Co. v. Hurley,* 100 Ga. App. 781 (112 S. E. 2d 320); *Hoffman v. National Surety Corp.,* 91 Ga. App. 414 (85 S. E. 2d 784). "The burden of proof is on the claimant in cases arising under the Workmen's Compensation Act to establish the fact that the employee has sustained an accidental injury such as is contemplated by the act." *Rivers v. Travelers Ins. Co.,* 93 Ga. App. 779 (1) (92 S. E. 2d 818). The medical testimony in this case shows clearly that the doctor felt that exertion did *not* cause the rupture. It is obvious that the doctor, in testifying that "anything could happen" was basing his opinion on an *extremely remote and not a probable theory. This is not a case where the rule as to conclusions from human experience applies. The question of the cause of the injury is solely a medical question which in this case could be answered only by competent medical testimony based at least on reasonable probability.* "It appears to be well settled that medical testimony' as to the possibility of a causal relation between a given accident or injury and the susequent death or impaired physical or mental condition of the person injured is not sufficient, standing alone, to establish such relation. By testimony as to possibility is meant testimony in which the witness asserts that the accident or injury 'might have', 'may have', or 'could have' caused, or 'possibly did' cause the subsequent physical condition or death or that a given physical condition (or death) 'might have', 'may have', or 'could have' resulted or 'possibly did' result from a previous accident or injury —testimony, that is, which is confined to words indicating the possibility or chance of the existence of the causal relation in question and does not include words indicating the probability or likelihood of its existence." 135 A.L.R. 517.

Having determined what interpretation is to be placed on the physician's testimony, another difficult problem arises in determining what weight is to be given his testimony as an expert on an internal condition in contrast with that given by the lay plaintiff. Although there are many cases in other jurisdictions, there appear to be few cases in Georgia in which our appellate courts have been faced with that particular problem. I subscribe

to the dissent in the case of *Continental Casualty Co. v. Bennett*, 69 Ga. App. 683, 693 (26 S. E. 2d 682), wherein Chief Judge Broyles, dissenting from the opinion of two Court of Appeals Judges, stated: "The real question in the case was whether there was any competent evidence showing that the blindness of the claimant resulted from his accidental injury on May 8, 1941, *and the burden was on the claimant to prove that it did.* This burden he failed to carry, as virtually admitted by the director. The director, in stating that none of the doctors for either side could say what caused the blindness, apparently thought that the defendants had the burden of proving what did cause it. Of course, they had no such burden, but they did show by un-contradicted (uncontradicted on material matters) medical testimony that the claimant's injury was not the cause of the loss of sight in his eye. The uncontradicted testimony of the de-defendants' medical witnesses, *that the corneal abrasion in the eye of the claimant could not have developed into iridocyclitis, unless an ulcer had developed after the abrasion and before the iridocyclitis, is in itself sufficient to demand a finding that the claimant's loss of vision was not caused by his accident of May 8, 1941, there being no contention and no proof that an ulcer had so developed in his eye.* Ordinarily, expert medical testimony can be believed or rejected by the hearing director, but in a case like this where the vital question in issue can be solved only by such testimony, and where the *material* and *controlling* parts of the testimony are uncontradicted, the testimony should and must be accepted as stating the truth." This was a two-judge opinion and I think that the majority ruling is superseded by *Crawford W. Long Hospital v. Mitchell*, 100 Ga. App. 276 (111 S. E. 2d 120) a three-judge opinion. This case, in my opinion, follows Judge Broyles' dissent above. Chief Justice Bleckley in the case of *Atlanta St. R. Co. v. Walker*, 93 Ga. 462, 465 (21 S. E. 48, 49) stated: "Scarcely anything is less reliable than a sick plaintiff's opinion of his own case when he is in pursuit of damages . . . But suppose the question were, whether in a given case, insanity was permanent or temporary. This would be a question for scientific experts, and no court would think of taking the opinion of an ordinary witness upon

it, with or without the facts on which the opinion was founded. Such a witness would be competent, upon stating the facts, to testify to his belief of the sickness or health of anyone or that he suffered pain. But this is a very different matter from taking his opinion upon the question of when and how sickness would terminate, or whether a state of pain would be temporary or permanent.' Non-expert opinion might be relied on to take the step from observed facts to a present state or condition, but to pass upon these same facts, the present state and condition included, to a probable future state and condition, might be within the competency of expert opinion only . . . because the question on which the witness in this case was permitted to give his opinion was a scientific question, we think the evidence should have been excluded." "Although according to a widely accepted view both expert and lay opinion are admissible only where there is a necessity for their use, the necessity is different in the two cases. The very reason for receiving expert opinion testimony is that persons inexperienced in the science, special art, or occupation involved would be unable to reach a proper conclusion. It is certainly absurd, therefore, to say that merely because the subject is a proper one for expert testimony inexperienced persons (non-expert witnesses) may give their opinions. In a number of cases the Supreme Court has held that lay opinion was inadmissible on what would have been a proper subject for expert opinion." Green, Ga. Law of Evidence, § 110, p. 264. *Patterson v. State*, 86 Ga. 70 (1) (12 S. E. 174); *Atlanta St. R. Co. v. Walker*, 93 Ga. 462, supra; *Evans v. Josephine Mills*, 124 Ga. 318 (2) (52 S. E. 538); *Johnson v. State*, 82 Ga. App. 840 (62 S. E. 2d 837). "When the subject under consideration is one within the knowledge of experts only, and there is no reason for the exercise of common knowledge, undisputed expert testimony which is based on scientific processes, methods, or knowledge is to be accepted as conclusive by the trier of the facts, provided the credibility of the witness or witnesses is accepted . . . where an injury is of such a character as to require skilled and professional men to determine the cause thereof, the question is one of science which must be proved by the testimony of skilled and professional men." 32 C. J. S.

§ 569 (d). "Expert or medical testimony is necessary . . . in cases where there is a serious question resolvable only by skilled determination, and which is not within the knowledge of lay witnesses or members of the fact finding tribunal, as to prove that an internal injury has in fact occurred, the nature of the injury, or whether a death is the proximate result of an injury, as where the issue relates to a causal connection between an injury and a subsequent condition which involves only a scientific inquiry. . ." 100 C. J. S. § 555 (5), pp. 673, 674. "Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving his reasons therefor, but if the issue shall be as to the existence of a fact, the opinions of witnesses generally shall be inadmissible." Code § 38-1708. Applying the foregoing rule, the court stated in Cone v. Davis, 66 Ga. App. 229, 237 (17 S. E. 2d 849): "The injury here was substantive and of such a nature that a witness of only common knowledge could not with reasonable certainty know whether or not the injury would be permanent . . . It was error to allow a party who was a witness to testify that in her opinion her injury was permanent."

In a compensation proceeding expert testimony is necessary to show that injuries were the cause of death where "the physical processes terminating in death are obscure and abstruse, and concerning which a layman can have no well-founded knowledge and can do no more than indulge in mere speculation . . . [In such a case] there is no proper foundation for a finding by the trier without expert medical testimony." Burton v. Holden & Martin Lumber Co., 112 Vt. 17 (20 A. 2d 991). A myriad of cases cited by counsel for both parties have been studied, together with innumerable other cases touching upon the problem. What I say is not in any way in conflict with the principle of law that findings of fact by the State Board of Workmen's Compensation based upon any competent evidence will not be disturbed by this court. Necessarily involved in this opinion is the case of Southern Ry. Co. v. Tankersley, 3 Ga. App. 548 (60 S. E. 297), in which it was stated that the jury could accept the testimony of the plaintiff in preference to the evidence of "a whole college of physicians." In that case it was stated that

several physicians testified that they examined the plaintiff immediately after the accident and discovered that he was not injured. The conclusion of this court in that case troubled us so much that the record was reviewed and, to our surprise, we found that only two physicians testified and their testimony was that they did not examine the plaintiff and that they made no diagnosis. The testimony of the physicians, therefore, was not positive or in contradiction to the plaintiff's testimony concerning his alleged injury. Much ado has been made of Justice Jackson's famous "whole college of physicians" utterance in *City of Atlanta v. Champe*, 66 Ga. 659, supra. It is about time to examine this statement and see just what it means. In my humble opinion it does not have the broad meaning attributed to it. It simply means that if a person has an ache or pain in a particular part of the body that person is better able to know it and testify as to its existence than a whole college of physicians. But that is a far cry from ruling that a lay, or non-expert witness, can testify as to *the cause of the pain.* All the claimant testified in this case was that after he stepped in a hole, he felt a tear—that he was not bothered by his stomach until he stepped in the hole. It is not necessarily true that the stepping in the hole was that necessary something, or caused the necessary something, which finally culminated in the perforation. I say that a layman or board of laymen are not competent to make such a finding. The mere fact that one thing happens before or simultaneously with a second, does not mean that the former caused or contributed to the latter. "Post hoc ergo propter hoc" leads down blind alleys. In *La Branche v. American Auto. Ins. Co.*, 89 Ga. App. 148 (78 S. E. 2d 621), on very similar evidence, compensation was denied and the ruling was affirmed. That case was decided correctly by this court because the denial of compensation was based on qualified medical testimony. The conclusion by this court in this case is wrong because the award has no competent evidence to support it and because the only competent evidence is against the award. If the majority is right in this case all the triers of fact have to do in such cases is to flip a coin. They can't miss.

*Judge Eberhardt concurs in this dissent.*