## 47966. H. M. PATTERSON & SONS v. GLOVER.

HALL, Presiding Judge. The employer appeals from the judgment of the superior court affirming an award of death benefits by the State Board of Workmen's Compensation.

A strange chain of events preceded the death of the employee who died either as a result of a cerebral hemorrhage or of multiple injuries sustained in an automobile collision. The doctor who performed the autopsy said it was impossible to determine which occurred first, but that either would have been ultimately fatal.

The deceased was a man of 63, employed as an assistant funeral director. His duties were indisputably light, both physically and mentally. He drove hearses and other company vehicles (all equipped with power steering and brakes, automatic transmission, and air

conditioning), arranged flowers, directed parking, etc. His undisputed medical history included hypertension and advanced arteriosclerosis. Contrary to the rather ambiguous factual findings of the board, all the evidence (which included testimony of his wife, co-workers and four doctors) demands a finding that he began to have a cerebral hemorrhage (stroke) of the gradual, slow leak type when he awoke that morning and that none of his work activities of the kind described would precipitate a stroke. He reported to work at noon and had a very routine day until about 6 o'clock, although he frequently complained of headache and was noticeably flushed in the face. Shortly after six, his supervisor asked him to drive out to the intersection of I-75 and Howell Mill Road (approximately two miles away) to pick up another employee whose vehicle had broken down there. About seven o'clock, the supervisor received a call from the deceased who said he couldn't locate the truck or person. He did not sound unduly upset at that time but didn't seem to know where he was. The supervisor instructed him to keep looking in the general vicinity. That was the last the employer heard from him.

About an hour later, the deceased was involved in a hit and run accident just north of Marietta. He was later apprehended by the Altanta police on West Paces Ferry Road. A Cobb County officer came down to investigate. He administered a balloon test for alcohol and found the results so minimal that he released the deceased without arresting him.

At 11:15 p. m., the deceased had a head-on collision in Canton, Georgia (approximately 45 miles from Atlanta) and was taken to a hospital where he died a few days later. There was no explanation of what he was doing in Marietta or Canton, but a natural inference, supported by medical opinion, was that his continuing stroke had badly confused him.

Other evidence showed that on the three days preceding, he had worked 8, 8 and 9 hours respectively, and on the final day had worked 7 (including an hour's dinner break) when last heard from. He routinely requested overtime work and averaged about 44 hours per week. The extra hour the evening before was spent picking up a casket at the airport. His wife accompanied him and testified that he was upset because the casket had been damaged in transit. She described the damage to the casket but said absolutely nothing about seeing a body, in whatever kind of condition. The deceased, who had worked for this employer for 16 years, was generally agreed to be a conscientious, faithful and dependable employee.

The Deputy Director found: "[I]t is apparent from a review of all the evidence that the claimant [sic] while driving a company vehicle sustained a slight stroke and later a massive cerebral hemmorage [sic] which caused impairment of his mental faculties. The evidence shows further that the claimant had worked overtime and had had quite a traumatic experience the day before this when he had come to pick up a body at the Airport and found that the casket and body had been damaged in transit. In addition to this fact it is apparent that his failure to find the missing vehicle and his fellow worker who was having trouble added to his consternation and that all of these facts combined with the evidence showed he suffered from arteriosclerosis and high blood pressure, all contributed to, aggravated and precipitated a stroke of such proportion that it caused incapacity to properly drive a vehicle and culminated in Mr. Glover sustaining a fatal head-on collision. I, therefore, find as a matter of fact that widow-claimant has carried the burden to show that her deceased husband . . . sustained an accidental injury which arose in and out of the course of his employment . . . and that he died

as a result of that accident on March 11, 1970, and that Mrs. Beulah Glover would be entitled to compensation under the provisions of the Workmen's Compensation Laws of the State of Georgia." The full board adopted these findings, although the chairman, in a special concurrence, pointed out that the award is based on the theory that the work *caused* the stroke while the only theory authorized by the evidence would be that it contributed to its severity.

We agree with the chairman's reasoning but not his conclusion that the award may still be affirmed although based on an erroneous theory of law. *Pike v. Maryland Casualty Co.,* 107 Ga. App. 49 (129 SE2d 78). Despite the shotgun wording of the findings ("contributed to, aggravated and precipitated"), the statement that "the claimant [sic] while driving a company vehicle sustained a slight stroke and later a massive cerebral hemmorage [sic]" shows that the award was based on the theory of initial causation or precipitation.

The only work related activities which preceded the onset of the stroke was one hour of overtime and the upset of finding a damaged casket. There is no evidence of a damaged body (contrary to the findings) and even if there were, it should hardly have shocked a man who had been an ambulance driver many years before he became associated with the funeral business. There is neither any evidence nor any authorized inference drawn from human experience that these two things would precipitate a stroke. On the other hand, we cannot say that one of his activities on the day he was having the stroke could not possibly have aggravated it to the point of fatality.

Accordingly, we reverse the judgment of the superior court and remand the case to the board with direction that it re-examine the evidence, make findings of fact consistent with it and then apply the correct

theory of law.

*Judgment reversed and remanded with direction. Evans and Clark, JJ., concur.*

ARGUED MARCH 6, 1973 — DECIDED APRIL 4, 1973.

*Candler, Cox & Andrews, E. Lewis Hansen,* for appellant.

*B. W. Crecelius,* for appellee.