## 47885. BROWN TRANSPORT CORPORATION v. JENKINS.

EVANS, Judge. This is a workmen's compensation case. The deputy director made an award in claimant's favor, finding that her husband's death arose out of and in the course of employment as a truck driver for Brown Transport Corporation on or about midnight, September 7, 1971; that he died of a myocardial infarction, secondary to atherosclerotic coronary artery disease (heart disease) while he was driving a GMC tractor, pulling two vans, on a trip from Augusta to Atlanta; and that death occurred before the employee reached the unloading station in Atlanta.

The board affirmed this award, and the Superior Court of Fulton County affirmed the award of the board.

Certain significant facts should be noted at the outset, to wit: *The employee had suffered with heart disease for a long time prior to his death, sufficient to cause enlargement of his heart and severe diseases of the coronary arteries. His heart was so greatly enlarged that it was twice as large as was normal.* (R-105, 106). The employee had made complaints about his physical situation but he attributed it to a large amount of gas on his stomach (R-64). On the morning of September 7, 1971, he had engaged in

strenuous work at home, consisting of climbing up and down a ladder for a great number of times, as he nailed plastic screening onto a porch (R-58; R-124, 125). He had tried to secure insurance in the past but had not been able to get it. During April or May, 1971, his doctor told him his "pressure" was up (R-122; R-60, 61). On the night of his death he was driving a GMC tractor, which was pulling one 26 foot trailer and one 20 foot trailer, loaded with 40,000 pounds of material. He usually drove at a speed of from 50 to 60 miles per hour at times on the trip (R-14, 15, 16, 17). His route from Augusta to Atlanta was partly on Interstate 20, and partly on the old highway, and usually required about 3 1/2 hours (R-14). The truck he was driving was not equipped with power-drive (R-32). It was his unbroken custom, and that of his fellow drivers, to always stop in Union Point for a rest break, but on the night in question he speeded up on his approach to Union Point and continued on to Atlanta, without making the customary stop (R-17). He never did reach the unloading station, but his truck was discovered on the public streets of Atlanta, not parked, but headed into the curb with the front wheel on or against the curb (R-20), his headlights were still burning; he slid his pedal brakes four or five feet (R-21); the truck was sitting "catty-cornered" in the street against the curb (R-23); when the truck was discovered, his lifeless form was found in the truck, not in a driving position, but he was lying in the truck with his head in his hand (R-31). His truck, because of its overall length, was much longer than a car, and he was required to exercise care in making turns (R-32). When his fellow drivers found him, he was "just folded over on his right side." (R-22)

The employer appeals from the judgment of the superior court affirming the award of the board. *Held:*

1. The two awards of the Workmen's Compensation Board, and the judgment of Fulton Superior Court are presumed to have been supported by every fact essential to make same valid and binding. *Atlantic C. L. R. Co. v. Gause,* 116 Ga. App. 216, 225 (156 SE2d 476); *Chance v. Chance,* 60 Ga. App. 889, 892 (5 SE2d 399); *Allen v. Smith,* 223 Ga. 265, 266 (154 SE2d 605). In workmen's compensation cases, the weight and credit of the testimony, and evidence, including conflicts therein, are solely matters for determination by the board. *Phoenix Ins. of Hartford v. Weaver,* 124 Ga. App. 423 (1) (183 SE2d 920), and cits., p. 425. Further, in workmen's compensation cases, under numerous decisions of this court, an award of the board will not be disturbed where

there is *any evidence* to support such award. *Wilson v. Aragon Mills,* 110 Ga. App. 392 (138 SE2d 596), and cits. And, of course, all the evidence, inferences, and conflicts, if any, must be construed most strongly in favor of upholding the award. *Austin v. General Accident &c. Corp.,* 56 Ga. App. 481 (193 SE 86); *Weathers v. American Casualty Co.,* 94 Ga. App. 530 (1) (95 SE2d 436); *Garrett v. Employers Mutual &c. Ins. Co.,* 105 Ga. App. 308, 311 (124 SE2d 450).

2. In order to show that a heart attack was precipitated by exertion of the employee while in the course of his employment, it is only required that it be shown that the work engaged in was sufficiently strenuous, or of such nature that, *combined with other factors in the case,* it raises a natural inference *through human experience* that the exertion contributed toward the precipitation. *Hoffman v. National Surety Corp.,* 91 Ga. App. 414 (85 SE2d 784). It may be shown by opinion evidence that the exertion, no matter how slight, or strenuous, when combined with other factors, *such as pre-existing heart disease,* precipitated the attack. *J. D. Jewell, Inc. v. Peck,* 116 Ga. App. 405, 406 (157 SE2d 806). Moreover, it has been held that "when the employee had a sudden attack while exerting himself at work, and there was no medical evidence that exertion at work did or did not contribute to the attack, an award of compensation was demanded." *Cabin Crafts, Inc. v. Pelfrey,* 119 Ga. App. 809, 811 (168 SE2d 660).

The 1963 amendment to Code § 114-102 (Ga. L. 1963, pp. 141, 142) has uniformly been construed to mean that when an employee in the course of his employment dies of a heart attack, the hearing director must initially weigh the evidence and determine whether or not the employment was a contributing proximate cause of the attack; "and where he concludes either way, if there is any evidence to support the finding, it cannot be set aside on appeal." *Brown Transport Corp. v. Blanchard,* 126 Ga. App. 333, 334 (190 SE2d 625). As pointed out by Judge Bell in *Fulton Industries v. Knight,* 127 Ga. App. 604 (194 SE2d 346), where the findings are sufficient and supported by evidence where some exertion is shown, and where the medical evidence shows that the death was caused by cardiac arrest, and where the hearing director, after weighing such evidence, finds in favor of either side, the award will be affirmed. In the *Knight* case the only exertion shown by the employee is that he walked up and down a flight of stairs two and a half hours before the heart

attack. In the present case the evidence is undisputed that the employee was perfectly well when he left for work, and that he left Augusta and drove non-stop for three and a half hours to Atlanta in a heavy GMC tractor pulling two vans, much of it on an old highway, without power drive. It does not take expert testimony by anybody under these circumstances to authorize the hearing director to find that the employee has been subjected to exertion. The employee had a bad heart and was ripe for a heart attack, but that is not the question. It matters not how predisposed the employee is to the attack, if he is in the course of his employment, and if the exertion of that employment, no matter how slight, contributes, no matter in what degree, to the accident. *J. D. Jewell, Inc. v. Peck,* 116 Ga. App. 405, supra. What amount of exertion, absent opinion testimony, will authorize the hearing director to find "from, a natural inference through human experience" that the two are related — that is, the work and the heart attack — is ordinarily a question for the hearing director, not for this court. *Hoffman v. National Surety Corp.,* 91 Ga. App. 414, supra, is not to the contrary of this statement. In that opinion, written by Judge Townsend, the only exertion shown by the employee was that he walked into his place of work after lunch, stepped up one step, and squatted down to drink a Coca Cola. That case was sent back to the Board with leave to the widow claimant to present additional testimony, if she could, linking the heart attack to the exertion shown.

3. In this case, the only witness who knew what happened is dead, and other evidence must be relied on. The claimant enters the trial with a presumption in her favor. "Where an employee is found dead in a place where he might reasonably be expected to be in the performance of his duties, *the natural presumption arises that his death arose out of and in the course of his employment."* (Emphasis supplied.) *Ga. Cas. & Surety Co. v. Conner,* 117 Ga. App. 233 (1) (160 SE2d 436). Further, claimant was not required to show by *direct evidence* that there was exertion because of performance of the employee's duties. It may be shown by *circumstantial evidence. Home Indemnity Co. v. Floyd,* 122 Ga. App. 87, 89 (176 SE2d 269). Or it may be shown by *knowledge from human experience. Hartford Accident &c. Co. v. Waters,* 87 Ga. App. 117 (73 SE2d 70); *Davis v. Cobb County,* 106 Ga. App. 336 (1) (126 SE2d 710). Presumptive evidence may exist in any case without the testimony of any witness. Any fact finding body, such as a jury or the Workmen's Compensation

Board, is entitled to consider as proven certain matters even without any testimony being introduced. It is provided in Code § 38-102 that "presumptive evidence consists of inferences drawn by human experience from the connection of cause and effect, and observations of human conduct." This statute is often called "the common-sense rule" and it is the silent witness that goes into every jury room with the jurors without the necessity of introduction of evidence. Jurors and all fact-finding boards are entitled to use their own common sense as intelligent human beings on many questions.

4. Does the evidence in this case, direct or circumstantial, support the three judgments of the lower tribunals to the effect that the employee died of a heart attack, which was precipitated by exertion in driving a very large truck to Atlanta?

Let us review the pertinent facts in the case. Jenkins had a heart twice as large as normal. He had suffered with heart disease for a long time before September 7, 1971, sufficient to cause enlargement of the heart and severe diseases of the coronary arteries. Yet, on that last day he worked in the morning by climbing up and down a ladder numerous times. He was a sick man when he sat down under the wheel of this very large truck, and started from Augusta to Atlanta for a 3 1/2 hour drive. The truck had two trailers attached, one being 26 feet and one being 20 feet, a total length of 46 feet besides the length of the tractor. There was no power steering or power brakes on the truck. It required much caution to turn curves because of the great length of the truck. He traveled during the night at 50 and 60 miles per hour, partly on an interstate highway, and partly on a two-lane highway. Can any intelligent person doubt that this task required exertion or that it was strenuous work? What does our "human experience" and observation "of cause and effect" tell us? Code § 38-102. Some of those vehicles he met on that night between Augusta and Atlanta may have dimmed their lights for him, and perhaps others did not. Is it a strenuous operation to meet another automobile or large truck on a two-lane highway at night, at a speed of 60 miles per hour, especially if the other refuses to dim his lights? As he was required to stop and start at the various stop lights in the municipalities through which he traveled, while not on the interstate highways, did this cause strain and exertion? Remember he had no power steering and no power brakes. Did his heart attack occur while he was driving; was it precipitated by the exertion of managing this large double-

van truck during the nighttime? Why didn't he stop in Union Point as he invariably did, for a rest break, except on this night? What does our *human experience* tell us about his reason for not stopping? Let us hear from Dr. Joseph C. Massee, expert physician witness on behalf of the employer, and he spells it out in plain and unmistakable language, as follows: "I would rather interpret his failure to stop at Union Point to the idea that perhaps he was *having pain* and he wanted to hurry on to Atlanta to see a doctor. As I understand it, Union Point was a truck stop, but not necessarily a medical center. If he was having trouble at that time due to his heart, he may have been hurrying on to Atlanta, trying to get to Atlanta." (Emphasis supplied.) There was no objection to this testimony and it comes from the witness of the employer. Doctor Massee had the same reasoning that every intelligent person would have under the "human experience" and "observations of human conduct" rule. Was Dr. Massee correct? Did Jenkins have a heart attack in or before he reached Union Point? He suffered with heart trouble when he left Augusta that night, and had been having severe heart trouble for a long time, so much that his heart was twice its normal size. He was found just one hour and 45 minutes after he accelerated speed and passed through Union Point, dead of a heart attack. When did the attack commence? Most likely before he reached Union Point, but certainly before he quit trying to control the truck, because he slid the brakes four or five feet and tried to drive off the street towards the curb. He did not turn his lights off. Did he suffer pain? He was found on the floor, folded over on his side with his head in his hand. He cannot come back from the dead to testify, but the tracks he left leave it beyond peradventure that this sick man suffered a heart attack between Augusta and Atlanta from the exertion of driving that large truck (no power brakes or power steering with two vans coupled to the tractor). What greater circumstantial evidence could be left in any case by the victim of a heart attack, as life was leaving his body?

5. The claimant here is not trying to overturn a judgment, but simply seeks to *uphold* two awards and one judgment. The burden is on the employer to show there was *absolutely no evidence, circumstantial or otherwise,* to support the award. This burden has not been carried.

*Judgment affirmed. Bell, C. J., Pannell, Deen and Clark, JJ., concur. Stolz, J., concurs in the judgment only. Hall, P. J.,*

*Eberhardt, P. J., and Quillian, J., dissent.*
ARGUED FEBRUARY 7, 1973 — DECIDED JULY 5, 1973 —
REHEARING DENIED JULY 25, 1973 —

*Hopkins & Gresham, H. Lowell Hopkins,* for appellant.
*Cumming, Nixon, Yow, Waller & Capers, O. Palmour Hollis,* for appellee.

HALL, Presiding Judge, dissenting. I dissent to the judgment and rationale of the majority opinion for the reason that it is in direct conflict with *Travelers Ins. Co. v. Maddox,* 118 Ga. App. 596 (164 SE2d 850) and previous decisions of this Court on the question of causal connection in Workmen's Compensation cases involving heart attacks.

It is important to remember that there are several different forms of evidence which will authorize a finding of a *causal connection* between employment and a heart attack. Care must be taken that we do not confuse these forms in our desire to reach a particular result. The first form of evidence is medical opinion testimony which, however slight, will suffice. The second is lay opinion testimony (with proper foundation laid, of course) that the work the employee was performing when his attack began was strenuous. In the absence of either of the above, resort may be had to the test of "natural inference through human experience" as stated in *Hoffman v. National Surety Corp.,* 91 Ga. App. 414 (85 SE2d 784). All of these forms are missing in the present case.

The facts of this case are undisputed. The employee was a truck driver of some 15 years experience and had been driving the same Augusta-Atlanta route for about three years. On the day of his death he had done some chores around his house; had rested for a few hours before being called into work; had made no complaints of feeling ill or had not appeared to his wife to be in pain or discomfort; and had left the Augusta terminal about 8:30 p. m. Two other truck drivers employed by the same company and driving the same route testified that they customarily took a coffee break with the deceased at a particular truck-stop, but that he had unaccountably not stopped that evening. When they reached Atlanta a few hours later, they discovered the deceased's truck standing in a street with its lights burning and with him slumped behind the wheel. They both also testified that they did not consider driving this type of truck to be a strain.

The autopsy showed that the employee had died of a myocardial

infarct, secondary to atherosclerotic coronary artery disease. In lay terms, he had a heart attack caused by the plugging of a coronary artery, the plugging itself caused by a gradual narrowing of the artery by the deposit of fatty particles. Two doctors testified, in response to hypothetical questions, on their opinion as to the causal connection between the employee's work and his death. There was no lay testimony on causation. One of the doctors (Dr. Massee) stated there was no causal connection: "Assuming that all of the above and foregoing facts are true, do you have an opinion as to whether or not the activities of Mr. Jenkins on the date of his death would be a competent producing cause, precipitating cause or contributory cause to his death?" (R-101) His answer: "I do." Question: "What is your opinion, Doctor?" Answer: "That there was no causal relationship between his activities and the myocardial infarct which caused his death." (R-101).

An issue in this case arises from the testimony of the other doctor (Dr. Murray). He was asked a detailed and perfectly proper hypothetical question including many of the facts outlined above. The doctor's answer to the question was based on several assumptions which were neither facts in evidence *nor even included in the hypothetical question.* Thus, the answer was legally unresponsive and should not have been considered. *Paulk v. Thomas,* 115 Ga. App. 436 (154 SE2d 872); *Holland Furnace Co. v. Willis,* 120 Ga. App. 733 (172 SE2d 149).

There is no favorable lay opinion testimony. The two other truck drivers testified to the contrary—that driving was not a strain. This leaves the record with no testimony concerning *any exertion* which might have caused the employee's attack. In this situation, the employee's work must be shown to be of such a strenuous nature that "it raises a natural inference through human experience that the exertion contributed toward the precipitation of the attack." *Hoffman v. National Surety Corp.,* 91 Ga. App. 414, supra. This court has held that truck driving (even with strong evidence the employee was very ill) was not such work as would authorize the above inference. *Travelers Ins. Co. v. Maddox,* 118 Ga. App. 596, supra. See also *Brown Transport Corp. v. Blanchard,* 126 Ga. App. 333 (190 SE2d 625).

It should be noted that the only precedent that is relevant to the facts in this case is *Maddox,* supra. The majority opinion completely ignores this authority. Instead it cites cases that are inapposite to the facts here. *J. D. Jewell, Inc. v. Peck,* 116 Ga. App. 405 (157 SE2d 806) had *medical testimony* to support the award.

*Fulton Industries v. Knight,* 127 Ga. App. 604 (194 SE2d 346), had *medical and lay testimony* as to causation and the disputed point was over the construction of the findings. *Brown Transport Corp. v. Blanchard,* 126 Ga. App. 333 (190 SE2d 625), supports this dissent by upholding the ruling that driving a truck 65 miles was not an aggravating cause. The term "any evidence rule" cannot be used as a generality; it must be based upon some form of legal evidence. There is no legal evidence here to support the award.

I am authorized to state that Presiding Judge Eberhardt and Judge Quillian concur in this dissent.