A94A0817. SEWELL v. BILL JOHNSON MOTORS, INC. et al.
(446 SE2d 239)

McMURRAY, Presiding Judge.

The State Board of Workers' Compensation ("the Board") awarded June C. Sewell ("claimant") medical and death benefits based on the finding of an administrative law judge ("ALJ") that claimant's spouse died of a work-related heart attack on November 29, 1991. We granted this discretionary appeal to review the superior court's reversal of claimant's award.

Joe C. Sewell was 51 years of age at the time of his death and was survived by claimant and two adult children. Sewell was five feet eight inches in height and he weighed about 160 pounds. Sewell gave up cigarette smoking in June 1988, but he occasionally smoked cigars. Sewell was not hypertensive and his domestic life did not bear unusual stress. Sewell underwent coronary bypass grafting in May 1989; he experienced no post-operative complications and he appeared to be in good health after the surgery.

In August 1989, Bill Johnson Motors, Inc. ("the employer") hired Sewell to manage the service department of its automobile dealership in LaGrange, Georgia. Sewell's work was constant and demanding, requiring him to supervise several employees and be present at the employer's place of business from 7:30 in the morning until 6:00 in the

evening, five days per week. When Sewell began working for the employer, he was aided by two assistant service managers. His responsibilities included entering work orders, retrieving automobiles for customers, handling customer complaints (that could not be resolved by the assistant service managers), ordering departmental supplies, meeting "with factory representatives . . ." and working closely with other departmental managers. These duties intensified after July 1991, because of employee attrition.[1] The added stress caused a decline in Sewell's physical and emotional appearance.[2]

Between 12:00 and 1:00 in the afternoon on November 29, 1991, Sewell's son, Joe E. Sewell, Jr., appeared at the employer's place of business and asked his father to accompany him to lunch. Sewell was busy serving customers and did not comply with his son's request. Joe E. Sewell, Jr. then admonished his father, " 'Well, everybody has got to eat,' and [Sewell] said he was short of help, so he couldn't go." At about 5:00 that afternoon, Sewell was observed sitting in a lounge area of the dealership. His appearance was "pallor" and he appeared to be suffering with back pain. Sewell removed his sweater and eyeglasses and sat with his arms on his legs and his face in his hands. A few minutes later, Sewell resumed his duties. He left work when the dealership closed at 6:00 p.m.

Sewell arrived home at about 7:00 on the evening of November 29, 1991, appearing ill and barely making it up the stairs to his home. Sewell was then experiencing severe back pain, but he managed to consume dinner and sit in front of the television. As the evening progressed, Sewell's condition deteriorated. He began experiencing nausea and vomiting. By 11:00 that night, Sewell's wife and daughter were compelled to take Sewell to Newnan Hospital. Sewell was conscious when he arrived at the hospital emergency room. He was complaining of discomfort and severe chest pain. An emergency room

---

[1] Bill Johnson, the majority stockholder of the corporate employer, affirmed that Sewell was required to absorb the loss of a discharged assistant service manager in July 1991, to increase the work load of employees under his supervision due to the resignation of an engine specialist in the fall of 1991 and to manage the service department alone for most of November 1991 due to the physical disability of the only remaining assistant service manager.

[2] Susan Farley worked with Sewell before his death. She testified that Sewell was overworked because the employer understaffed the service department; that Sewell's physical appearance declined after July 1991, and that Sewell's job was emotionally and physically demanding. Claimant testified that her husband was in good health before July 1991 and that he rarely missed work because of illness. She explained that her husband's health began deteriorating in July or August 1991; that Sewell was out of work for two weeks in July 1991 because of "a fever, a real severe cough, and severe headaches" and that her husband returned to work before recovery because his employer was "shorthanded." Claimant also testified that Sewell did not experience chest pain between July and November 1991, but explained that Sewell did not sleep well during this period; that he became uncharacteristically irritable and that he developed "stomach problems" in October 1991 and back pain in November 1991.

team attempted to ease Sewell's burden. However, "the patient seized[,] clenched tight his teeth" and died about an hour after admission to the emergency room. No autopsy was performed. The cause of death was declared, "cardiopulmonary arrest."

The ALJ awarded claimant full medical and death benefits based on findings that Sewell died of a work-related heart attack and that claimant was wholly dependent on Sewell for support. The Board adopted the ALJ's finding that Sewell died of a work-related heart attack, but reduced claimant's death benefits based on evidence that claimant was only partially dependent on Sewell for support. The employer appealed to the superior court. Claimant cross-appealed, challenging the Board's finding as to her degree of dependency on Sewell for support. The superior court reversed, finding that "[t]here is simply no evidence from which it can be found that the Employee died of a heart attack [and that, since the] Employee did not die at work[,] the Widow/Claimant cannot utilize any presumption which might attach to a death at work." The superior court did not reach claimant's cross-appeal since it determined that claimant was not entitled to any workers' compensation benefits. This appeal followed. *Held*:

1. Claimant contends in her first two enumerations that the superior court failed to apply the "any evidence" test in reviewing the Board's finding that Sewell died of a work-related heart attack.

"In *Guye v. Home Indem. Co.*, 241 Ga. 213, 215 (244 SE2d 864) (1978), [the Georgia Supreme Court] pointed out: 'It is well recognized in "heart attack" cases that it is often difficult for the trier of fact to find the line between a noncompensable heart injury that is a symptom of an existing disease merely manifested during job exertion, and a compensable heart injury to which the job exertion was a contributing precipitating factor. (Cits.)' In *Guye* the employee's heart attack symptoms started on the job following exertion. There was no medical evidence as to the cause of the attack. The question before [the Supreme Court] there was whether, without medical evidence as to causation, the natural inference could satisfy the 'preponderance of competent and credible evidence' requirement of our law. OCGA § 34-9-1 (4) (Code Ann. § 114-102), supra. [The Supreme Court] found that it could." *Southwire Co. v. Cato*, 250 Ga. 895, 897 (302 SE2d 91) (1983).

In the case sub judice, there was no autopsy and therefore no means of determining the precise cause of Sewell's death. However, Dr. William Michael Brown testified (via deposition) that he reviewed Sewell's medical records and depositions regarding the circumstances of Sewell's death and that "the information that was presented certainly suggested that [Sewell] had a heart attack at the time of his death." Further, as in *Guye v. Home Indem. Co.*, supra, there is evidence that Sewell's heart attack symptoms started on the job follow-

ing work-related exertion. Specifically, one of Sewell's co-workers testified that she observed Sewell sitting in a lounge area in the late afternoon before Sewell's death; that Sewell then appeared "pallor" and to be suffering with back pain and that Sewell removed his sweater and eyeglasses and sat with his arms on his legs and his face in his hands. Joe E. Sewell, Jr. testified that he went to see his father at work earlier on the same afternoon; that he then observed his father "hold his back . . . ." and that his father was so busy attending to the employers' business that he was unable to talk (to his son) for an extended period of time or pause for lunch. This evidence, evidence that Sewell experienced incapacitating back pain upon arriving home from work, medical testimony that work-related stress could have been the precipitating factor of Sewell's heart attack, evidence that Sewell's physical and emotional health deteriorated as his job became progressively demanding in 1991 and evidence that Sewell was under unusually high work-related stress during the afternoon before his death authorized the administrative law judge's findings, as adopted by the Board, that Sewell died of a work-related heart attack. " ' "Questions as to credibility and preponderance address themselves to the trier of facts. (Cits.) On appeal, the appellate tribunal does not determine the credibility of witnesses or the preponderance of the evidence. The appellate tribunal utilizes the 'any evidence' test, a test not available to the trier of facts in deciding disputed factual issues." (Cit.)' *Hodges v. William L. Sloan, Inc.,* 173 Ga. App. 358, 359 (326 SE2d 556) (1985)." *Southwire Co. v. Eason,* 181 Ga. App. 708, 709 (353 SE2d 567). Consequently, since there was competent and credible evidence in the case sub judice to support the Board's award adopting the ALJ's finding that Sewell died of a work-related heart attack the superior court erred in reversing the Board's finding and award.

2. Next, claimant contends the superior court's decision "is contrary to law since it does not address the dependency issue raised in the Cross Appeal."

The superior court has original appellate jurisdiction in workers' compensation cases, not the Court of Appeals. OCGA § 34-9-105 (b). In such cases, the Court of Appeals is limited to those issues considered first by the superior court. See *Terry v. Houston County Bd. of Ed.,* 178 Ga. App. 296, 298 (342 SE2d 774). Consequently, since the superior court did not reach claimant's cross-appeal from the Board's ruling that she was only partially dependent upon Sewell for support, we remand the case sub judice to the superior court for consideration of claimant's cross-appeal.

*Judgment reversed and case remanded. Pope, C. J., and Smith, J., concur.*

Decided June 29, 1994 —
Reconsideration denied July 13, 1994.

*Sherrod & Bernard, John W. Sherrod,* for appellant.
*Drew, Eckl & Farnham, Ann Bishop-Byars,* for appellees.